IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2003

## STATE OF TENNESSEE v. RASHE MOORE

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-06306, 00-06313-17     Joseph B. Dailey, Judge**

_____

**No. W2002-01195-CCA-R3-CD  - Filed December 3, 2003**

_____

The defendant was found guilty of six counts of aggravated rape, seven counts of especially aggravated kidnapping, five counts of aggravated robbery, and one count of aggravated burglary. The defendant contends on appeal that (1) the trial court erred in denying his motion to suppress the photographic identification, (2) the evidence was insufficient to support the convictions, (3) the trial court erred in excluding evidence of a scar upon the defendant's abdomen, (4) the trial court erred in not requiring the State to make an election of offenses as to the aggravated rape convictions, (5) the trial court did not properly instruct the jury on lesser included offenses, and (6) the sentence was improper. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. GARY R. WADE, P.J., concurred in the result.

Mark Mesler and Howard B. Manis, Memphis, Tennessee, for the appellant, Rashe Moore.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Robert Wilson Jones, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Shelby County Grand Jury indicted the defendant, Rashe Moore, on two counts of aggravated rape (No. 00-06306), two counts of aggravated rape (No. 00-06313), two counts of aggravated rape (No. 00-06314), seven counts of especially aggravated kidnapping (No. 00-06315), five counts of aggravated robbery (No. 00-06316), and one count of aggravated burglary (No. 00-06317). The defendant was tried by a jury in February of 2002 and convicted of aggravated rape as charged in No. 00-06306 and in No. 00-06313. Under No. 00-06314, the jury found the defendant guilty "as charged in the indictment during the incident involving (1) the first instance which occurred before she was taken into the bathroom and (2) the second instance which occurred after

she was taken from the kitchen to the couch with the pillow over her head." The jury found the defendant guilty as charged of seven counts of especially aggravated kidnapping, five counts of aggravated robbery, and one count of aggravated burglary.

Under No. 00-06306, the trial court sentenced the defendant for aggravated rape on count one to twenty-one years confinement at 100% as a violent offender, consecutive to his other sentences, and a *nolle prosequi* was entered as to count two. Under No. 00-06313, the trial court merged the two convictions for aggravated rape and sentenced the defendant to twenty-one years confinement at 100% as a violent offender, consecutive to his other sentences. Under No. 00-06314, the trial court merged the defendant's two convictions for aggravated rape and sentenced the defendant to twenty-one years confinement at 100% as a violent offender, consecutive to his other sentences. For each of the seven convictions for especially aggravated kidnapping under No. 00-06315, the trial court sentenced the defendant to twenty-one years confinement at 100% as a violent offender, with each sentence to run concurrent to the others under this indictment number and consecutive to the other sentences imposed. For each of the five convictions for aggravated robbery under No. 00-06316, the trial court sentenced the defendant to eleven years confinement at 30% as a standard offender, with each sentence to run concurrent to the others under this indictment number and consecutive to the other sentences imposed. For the aggravated burglary conviction under No. 00-06137, the trial court sentenced the defendant to four years confinement at 30% as a standard offender to run consecutive to the other sentences imposed. The defendant received an effective sentence of ninety-nine years.

The defendant timely filed a motion for new trial. The motion was denied, and the defendant timely filed his notice of appeal. The defendant contends on appeal that (1) the trial court erred in denying his motion to suppress the photographic identification, (2) the evidence was insufficient to support the convictions, (3) the trial court erred in excluding evidence of a scar upon the defendant's abdomen, (4) the trial court erred in not requiring the State to make an election of offenses as to the aggravated rape convictions, (5) the trial court did not properly instruct the jury on lesser included offenses, and (6) the sentence was improper.

**Facts**

On the evening of July 21, 1999, Albert Smith was at his home in Memphis, Tennessee, with his eight-year-old son Kevin Smith and his friend Deana Taylor. Albert answered a knock on the door, while Deana and Kevin remained on the couch in the den. The person at the door was an older man who began arguing with Albert. The man had a handgun and eventually forced his way into the house. The man ordered everyone to give him everything they had and get down on the floor in the den.

Moments later, a second younger man arrived. Deana later described the younger man as being short and having a round face and a low haircut (almost bald). The younger man was also

armed with a handgun. The man told them that he "wanted the money" and began ransacking the house.

A few minutes later, Albert's roommate, Joshua Jones, arrived at the house. Joshua was accompanied by Shauntel and Latoya Knox. As Joshua and the two girls attempted to enter the house, Albert tried to warn them of what was happening. The armed men forced everyone into the house at gunpoint. The men then robbed Joshua and the two girls. All of the victims were forced to strip down to their underwear and lie on the floor in the den.

The older man ordered Latoya into another room while the younger man held the rest of the victims at gunpoint. He forced her to perform fellatio upon him while holding a gun to her head. The older man and Latoya then returned to the den. Next, the younger man ordered Shauntel into a different room and forced her to perform fellatio upon him. During this time, the older man remained in the den and held the other victims at gunpoint. A pager belonging to one of the victims sounded, and the older man fired his gun. Hearing the gunshot, the younger man and Shauntel returned to the den.

The men ordered everyone into the kitchen. All of the victims were forced to lie together in a heap on the kitchen floor. The men taped the victims' hands and feet together with duct tape. The victims were then covered with a sheet, blocking their view of the events that happened after that time. While under the sheet, the victims heard additional intruders enter the house. All of the men were making threats and going through the house. The victims testified that they were terrified. At one point, the eight-year-old urinated on himself.

While the victims were still piled in the kitchen, the older man ordered Deana into the other room. He forced her to kiss him on the mouth. The older man attempted to penetrate her vaginally from the rear with his penis and then, ultimately, penetrated her vaginally from the front. She was then ordered into the bathroom to clean herself. Around the same time that Deana was in the bathroom, Marcus Stewart arrived at the house. Marcus knocked on the door but no one answered. While Marcus remained outside, one of the men went out a back door and ran around the house. He came up behind Marcus and forced him into the house at gunpoint. The men then robbed Marcus. They pulled his shirt over his head and pulled his pants down around his ankles. He was then ordered into the kitchen with the other victims and was also bound with duct tape.

After Marcus arrived, the older man came back and put a pillowcase over Deana's head. The men then took her into another room. One of the men stated that he was going to shoot her. Instead, he put on a condom and forced his penis into her mouth. Another assailant, wearing a sandwich bag, then forced his penis into her mouth. An unknown number of assailants vaginally penetrated her. She was then ordered back into the kitchen with the other victims. The assailants left and the incident was reported to the police. The entire ordeal lasted approximately two hours.

The younger man involved in the attack was later identified as Rashe Moore, the defendant in this case. Deana Taylor, Albert Smith, and Shantel Knox each identified the defendant in a photo

line-up conducted after the incident. Those three witnesses, along with Latoya Knox, also identified the defendant in court. The defendant was tried and convicted by a jury of aggravated rape, especially aggravated kidnapping, aggravated robbery, and aggravated burglary. He was given an effective sentence of ninety-nine years to be served in the Tennessee Department of Correction.

**Analysis**

The defendant now contends on appeal that (1) the trial court erred in denying his motion to suppress the photographic identification, (2) the evidence was insufficient to support the convictions, (3) the trial court erred in excluding evidence of a scar upon the defendant's abdomen, (4) the trial court erred in not requiring the State to make an election of offenses as to the aggravated rape convictions, (5) the trial court did not properly instruct the jury on lesser included offenses, and (6) the sentence was improper.

I. Motion to Suppress Photo Identification

The defendant argues that the trial court erred in not suppressing the photographic line-up identification of the defendant. Specifically, he contends that the photo identification procedure was unduly suggestive, because the photos were "grossly dissimilar."

In Neil v Biggers, the United States Supreme Court established a two-part analysis to assess the validity of a pre-trial identification. 409 U.S. 188, 198-99 (1972). First, the court must determine whether the procedure used to obtain the identification was unduly suggestive. Id. at 198. A violation of due process has occurred if the identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. This standard has been adopted by our state's supreme court. Bennett v. State, 530 S.W.2d 511, 512-15 (Tenn. 1975).

Second, if the identification was unduly suggestive, the court must determine, under the totality of the circumstances, whether the identification is nevertheless reliable. Biggers, 409 U.S. at 199. A finding that the pre-trial identification was unreliable will also require the exclusion of a subsequent in-court identification by the same witness. State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Although an identification process may be suggestive, it may satisfy due process as reliable and admissible if the totality of the circumstances so warrant. State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). Factors to be considered in determining whether a violation of due process has occurred are:
    (1) the opportunity of the witness to view the criminal at the time of the crime;
    (2) the witness' degree of attention at the time of the crime;
    (3) the accuracy of the witness' prior description of the criminal;
    (4) the level of certainty demonstrated at the confrontation; and
    (5) the time elapsed between the crime and the confrontation.
Philpott, 882 S.W.2d at 400 (citing Biggers, 409 U.S. at 199-200).

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, this Court must defer to the ruling of the trial court. State v. Cribbs, 967 S.W.2d 773, 795 (Tenn. 1998).

In this case, the trial court denied the defendant's motion to suppress, finding that the photo line-up was properly presented to the witnesses and that it fairly presented six individuals of similar appearance. The defendant contends that the individuals do not resemble him. He argues that the individuals in the photos have different complexions, hair, noses, ears, and facial hair. After reviewing the photo line-up itself, we agree with the trial court that the individuals are similar in appearance. Each of the officers testifying at the suppression hearing indicated that they did not in any way suggest who the witnesses should pick out. In fact, the officers told the witnesses that they should not feel as though they had to pick out someone. Additionally, each witness was read and given the "Advice to Witness" form describing the procedure the witness should follow in identifying a suspect.

We hold that the procedure used to obtain the photo line-up identification was not unduly suggestive. Therefore, we need not determine the second prong of the analysis. The defendant has not shown that the evidence preponderates against the ruling of the trial court. This issue is without merit.

II. Insufficient Evidence

The defendant argues on appeal that the evidence was insufficient to identify him as the person who committed these offenses. When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). This Court will not re-weigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). Furthermore, in a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

The defendant does not challenge that any of these crimes occurred as the witnesses described them. However, he contends that the evidence was insufficient to establish that he was the perpetrator of these crimes. In court, four of the victims in this case positively identified the defendant as the "younger man" who committed these crimes. Three of these victims had also previously identified the defendant in a photo line-up. The credibility of these witnesses was a matter that was entrusted to the jury. The defendant testified that he was at a local club with his girlfriend during the time that these crimes occurred. However, he did not produce any witnesses to corroborate his story. We hold that the evidence was sufficient to identify the defendant as the perpetrator of these crimes.

The defendant further contends that the limited detention of the victims and the change of rooms was not legally sufficient to constitute especially aggravated kidnapping. He argues that detention and movement was incidental to the robberies. The Tennessee Supreme Court has recognized that a separate kidnapping conviction may violate due process when the kidnapping is incidental to an accompanying felony and not "significant enough, in and of itself, to warrant independent prosecution." State v. Anthony, 817 S.W.2d 299, 306 (Tenn. 1991). It must first be determined whether the movement or confinement used was beyond that necessary to commit the accompanying felony. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997) (citing Anthony, 817 S.W.2d at 306). "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id.

As the State points out in its brief, this issue was previously determined in the direct appeal of the co-defendant. State v. Genore Dancy, No. W2001-02451-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 145, at **10-15 (Tenn. Crim. App., at Jackson, Feb. 18, 2003). In that case this Court held that:

> [T]he victims' confinement in the kitchen was unnecessary to the consummation of the associated crimes. As noted above, the robberies occurred before the victims were moved and confined. Also, it was not necessary to confine the other victims as a means of assaulting Ms. Taylor, especially when as many as five intruders were in the house. After both of her rape ordeals, Ms. Taylor was returned to the kitchen, where all of the victims were held until the intruders left the house. Furthermore, the extent of the confinement seems superfluous to the commission of any of the offenses. The victims, sans clothing, were bound hand and foot and left in a heap, under a sheet, on the kitchen floor.

Thus, we readily determine that the first prong of the <u>Dixon</u> test is met. We now consider whether the movement or confinement prevented the victims from summoning help, lessened the intruder's risk of detection, *or* significantly imperiled the victims or increased their risk of harm. We conclude that the movement of the victims away from the living room where the front door of the house was located at least hampered the victims in escaping or summoning help; more patently, the movement decreased the intruders' risk of detection. More patently still, the actions of binding the victims hand and foot with duct tape, piling them onto one another in the floor, and covering them with a sheet rendered the victims utterly defenseless to any assaults that the intruders might have inflicted upon them. Accordingly, we find that this confinement increased the risk of harm to the victims.

As we held in the previous appeal under the facts of this case, the convictions for especially aggravated kidnapping does not offend due process. This issue is without merit.

## III. Display of Abdomen Scar

The defendant contends that the trial court erred in refusing to allow him to raise his shirt to display a scar for the jury. He argues that the evidence was relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. A trial court's decision as to the relevance of evidence under Rule 401 will be reversed only upon a showing of abuse of discretion. <u>State v. Powers</u>, 101 S.W.3d 383, 395 (Tenn. 2003). We agree with the trial court's decision and fail to see how this evidence would have been relevant in this case. The defendant testified that he had a scar on his abdomen above the waist, but the trial court would not allow him to raise his shirt and display it to the jury. The victim, Shauntel Knox, testified that when the defendant forced her to perform fellatio on him, she never saw above his waist. He dropped his pants but never removed or raised his shirt. Whether or not the defendant has a scar on his abdomen had no relevance to this case. This issue is without merit.

## IV. Election of Offenses

The defendant also contends that the trial court erroneously failed to require the State to elect between the two counts of aggravated rape against Deana Taylor, charged in the same indictment. The evidence at trial revealed two separate incidents of sexual penetration. In support of this argument, he relies upon <u>State v. Brown</u>, which holds that "when the evidence indicates that the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." 992 S.W.2d 389, 391 (Tenn. 1999). The primary purpose behind requiring the State to elect a particular offense is "to ensure that the jurors deliberate over and render a verdict based on the same offense." <u>Id.</u> The State contends that the present case presents no danger of a patchwork verdict because the jury was given a special instruction as to the separate incidents.

The courts of this state have repeatedly held that when evidence is presented of multiple

offenses that would fit the allegations of the charge, the trial court must require the State to elect the particular offense for which a conviction is sought and must instruct the jury as to the need for jury unanimity regarding the finding of the particular offense elected. See, e.g., State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); State v. Shelton, 851 S.W.2d 134, 136 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The requirement of election serves several purposes: (1) it enables the defendant to prepare for the specific charge; (2) it protects a defendant against double jeopardy; (3) it ensures the jurors' deliberation over and their return of a verdict based upon the same offense; (4) it enables the trial judge to review the weight of the evidence in its role as the thirteenth juror; and (5) it enables an appellate court to review the legal sufficiency of the evidence. Brown, 992 S.W.2d at 391.

The requirement of election and a jury unanimity instruction exists even though the defendant has not requested them. See Burlison, 501 S.W.2d at 804. Moreover, failure to follow the procedures is considered to be of constitutional magnitude and will result in reversal of the conviction, absent the error being harmless beyond a reasonable doubt. See Adams, 24 S.W.3d 289, 294 (Tenn. 2000); see also, e.g., Shelton, 851 S.W.2d at 138.

The special instruction given by the trial court in this case instructed the jury to determine a conviction based upon each incident. The jury was instructed to "consider each incident raised by the proof separately and make a unanimous decision as to whether the essential elements of the crime have been proven beyond a reasonable doubt for each separate instance." The two separate instances were referred to as:
1. The first instance, which occurred before she was taken into the bathroom.
2. The second instance, which occurred after she was taken from the kitchen to the couch with the pillowcase over her head.
The jury found the defendant guilty as to both instances. The jury instruction given by the court alleviated the problem of a patchwork verdict by making it clear that the jury's verdict was based on a unanimous decision. This issue is without merit.

V. Failure to Charge Lesser Included Offenses

The defendant contends that the trial court erred in failing to instruct the jury on facilitation as a lesser included offense in the aggravated rape of Latoya Knox , in which the co-defendant forced her to perform fellatio upon him. He also contends that facilitation should have been charged as a lesser included offense in the aggravated rape of Deana Taylor, in which the victim was raped by multiple offenders. In connection with the rape counts, the trial court instructed the jury about criminal responsibility through the act of another, but the court did not instruct the jury as to the lesser included offense of facilitation. The defendant also contends that false imprisonment should have been instructed as a lesser included offense of especially aggravated kidnapping.

The defendant orally requested that the trial court instruct the jury as to facilitation. The trial court found that there was no factual basis to support a charge of facilitation. The lesser included offense of false imprisonment was never discussed at trial. The State concedes in its brief that false

imprisonment is a lesser included offense under part (a) of State v. Burns, 6 S.W.3d 453, 466-67. However, the State argues that any error in failing to charge false imprisonment was harmless.

The defendant argues that a trial court is required to instruct the jury on all lesser included offenses if the evidence is legally sufficient to support a conviction for the lesser offense. State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). The trial in this case began on February 11, 2002. The Tennessee legislature, in 2001, amended Tennessee Code Annotated section 40-18-110 to provide that an instruction as to a lesser included offense is waived unless the defendant requests in writing, prior to the trial court's charge to the jury, that such an instruction be provided to the jury. Tenn. Code Ann. § 40-18-110(c). This amendment to Tennessee Code Annotated section 40-18-110 governs all trials on or after January 1, 2002. 2001 Tenn. Pub. Acts 338, § 2. Because the defendant did not request an instruction on the lesser included offenses of facilitation of aggravated rape and false imprisonment in writing prior to the trial court's charge to the jury, the defendant has not presented a ground upon which relief may be granted. Tenn. Code Ann. § 40-18-110(c). Therefore, this issue is without merit.

VI. Sentencing

The defendant contends that the sentence imposed by the trial court is excessive. A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). When a defendant appeals the length, range, or manner of service of his or her sentence, it is this Court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The trial court applied three enhancement factors and no mitigating factors. The court correctly applied factors two (previous criminal history), four (more than one victim), and ten (possessed or employed a firearm). The trial court applied factor two to all of the charges but applied factors four and ten only to the aggravated burglary charge. The trial court indicated that it would not give great weight to factor two, because the previous history involved only two misdemeanor convictions. The defendant agrees with the State that no mitigating factors apply in this case.

Tennessee Code Annotated section 39-13-305(b)(2), concerning especially aggravated kidnapping, states that "[i]f the offender voluntarily releases the victim alive . . . such actions shall be considered by the court as a mitigating factor at the time of sentencing." This code section requires "mandatory consideration of this mitigating factor if the victim is released alive." State v. Arnett, 49 S.W.3d 250, 264 n.9 (Tenn. 2001). All of the victims in this case were released alive. This mitigating factor obviously applies. While not expressly considering this mitigating factor, the trial court did recognize that "luckily for the victims . . . [n]o one was killed." We hold that this mitigating factor should be considered as to the especially aggravated kidnapping convictions.

When there are applicable enhancement factors, but no mitigating factors for a Class A felony, "the court shall set the sentence at or above the midpoint of the range." Tenn. Code Ann. § 40-35-210(d). When there are applicable enhancement and mitigating factors for a Class A felony, "the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the enhancement factors." Id. at -210(e). When there are applicable enhancement factors, but no mitigating factors for a Class B, C, D, or E felony, "the court may set the sentence above the minimum in that range but still within the range." Id. at -210(d). The defendant was convicted of aggravated rapes (Class A felonies), especially aggravated kidnappings (Class A felonies), aggravated robberies (Class B felonies), and aggravated burglary (Class C felony). The defendant is a Range I offender. The appropriate sentence ranges are fifteen to twenty-five years for the Class A felonies, eight to twelve years for the Class B felonies, and three to six years for the Class C felony. Tenn. Code Ann. § 40-35-112(a).

The defendant was sentenced to twenty-one years on each of the Class A felonies, eleven years on each of the Class B felonies, and four years on the Class C felony. The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming the trial court has complied with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). A defendant's sentence "is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years." State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)). In light of the appropriate enhancement factor applied by the trial court, we cannot say that a sentence of one year above the presumptive sentence on the Class A felonies of aggravated rape is excessive. In light of the facts of this case, we give little weight to the mitigating factor applicable to the especially aggravated kidnapping conviction and hold that the sentence was not excessive. As to the other sentences, we do not find from the record that the sentences imposed by the trial court were excessive.

The defendant also argues that the trial court erred in imposing consecutive sentencing in this case. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of the following statutory criteria apply:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The trial court found that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing crimes in which the risk to human life was high. In doing so, the trial court stated in part:

I don't know how you could argue that [the dangerous offender category] doesn't apply in this case - how you could argue that individuals - that men who bust into someone else's apartment with guns drawn, herd people together in the livingroom, threaten to kill them, make them lie down, ransack the place, rape repeatedly, herd them into another room, make [them] disrobe - all the things that these people were put through - how one could, with a straight face, argue that this conduct does not indicate little or no regard for human life or does not demonstrate any hesitation about committing a crime in which the risk to human life is high.

The record supports the trial court's finding that the defendant is a dangerous offender.

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

In imposing consecutive sentencing, the trial court found that it was necessary to protect the community and that it was reasonably related to the severity of the offenses. After reviewing the record, we find that the trial court did not err in imposing consecutive sentencing.

## Conclusion

Based on the foregoing reasons and the record as a whole, we affirm the judgments of the trial court in all respects.

_____
JOHN EVERETT WILLIAMS, JUDGE